# EXHIBIT W

# EXHIBIT W

| | |
|---|---|
| **To:** | Mary Margaret L. O'Donnell(tmdocketing@bluefilamentlaw.com) |
| **Subject:** | U.S. Trademark Application Serial No. 79336100 - GLUCOSE GODDESS - TMC0624WOUS |
| **Sent:** | August 28, 2023 04:59:27 PM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

screencapture-www-glucosebuddy-com-16927393076151
screencapture-onedrop-today-collections-bundle-3-16927397287761
screencapture-onedrop-today-blogs-blog-diabetes-resources-for-healthy-living-16927398025651
screencapture-shop-onetouch-com-expert-guidance-product-OTSUS05_0031_OTSUSBND-EGA-16927433469171
screencapture-www-mysugr-com-en-diabetes-app-16927436046821
screencapture-sugarmds-com-category-diabetes-type-1-diabetes-type-2-diabetes-16932413828291
screencapture-www-yourdiabetesinsider-com-coaching-16932423258351
screencapture-www-yourdiabetesinsider-com-blog-16932429735731
screencapture-www-thewelltheory-com-product-category-diabetic-nerve-pain-16932437417541
screencapture-www-thewelltheory-com-drwarner-seminars-16932438249641
screencapture-www-riselyhealth-com-categories-diabetes-tips-16932446808191
screencapture-www-riselyhealth-com-1-1-coaching-16932447755101
screencapture-sarahtownley-com-type-2-diabetes-the-disease-process-16932451152151
screencapture-sarahtownley-com-type-2-diabetes-coach-16932452105661
screencapture-ahdictionary-com-word-search-html-16932459764561
screencapture-ahdictionary-com-word-search-html-16932460672351
screencapture-ahdictionary-com-word-search-html-16932463073841
screencapture-www-oxfordlearnersdictionaries-com-us-definition-english-seminar-16932465103081

## United States Patent and Trademark Office (USPTO)
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 79336100

**Mark:** GLUCOSE GODDESS

**Correspondence Address:**
Mary Margaret L. O'Donnell
Blue Filament Law PLLC
700 E. Maple
Suite 450
Birmingham MI 48009
UNITED STATES

**Applicant:** Madame Jessica INCHAUSPÉ

**Reference/Docket No.** TMC0624WOUS

**Correspondence Email Address:**  tmdocketing@bluefilamentlaw.com

# FINAL OFFICE ACTION

**International Registration No.  1650845**

**The USPTO must receive applicant's response to this letter within <u>six months</u> of the issue date below or the application will be <u>abandoned</u>**. Respond using the Trademark Electronic Application System (TEAS) and/or Electronic System for Trademark Trials and Appeals (ESTTA). A link to the appropriate TEAS response form and/or to ESTTA for an appeal appears at the end of this Office action.

**Issue date:**  August 28, 2023

This final Office action is in response to applicant's communication filed on July 10, 2023.

## Issues Resolved

The July 7, 2023 CAR form and response filed on July 10, 2023 together satisfy the following issues: Requirement to Provide an Email Address for Applicant, Requirement that Applicant be Represented by U.S.-Licensed Counsel, and Disclaimer Requirement. *See* TMEP §§713.02, 714.04.

## Summary of Final Issues that Applicant Must Address

1. Trademark Act Section 2(d) PARTIAL Refusal - Likelihood of Confusion
2. Requirement to Clarify the Identification of Goods and/or Services

## Trademark Act Section 2(d) PARTIAL Refusal - Likelihood of Confusion

Registration of the applied-for mark was previously refused as to International Classes 5, 9, 10, and 44 because of a likelihood of confusion with the mark in U.S. Registration No. 3107841. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  Applicant submitted arguments and evidence in response to the refusal. Applicant's arguments and evidence have been carefully considered and are not persuasive, for the reasons explained below.  Therefore, the refusal under Trademark Act Section 2(d) as to International Classes 5, 9, 10 and 44 is now made FINAL with respect to U.S. Registration No. 3107841. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.63(b).

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source

of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [and/or services] and differences in the marks."); TMEP §1207.01.

Similarity of the Marks

In a likelihood of confusion determination, the marks in their entireties are compared for similarities in appearance, sound, connotation, and commercial impression. *In re i.am.symbolic, llc*, 866 F.3d 1315, 1323, 123 USPQ2d 1744, 1748 (Fed. Cir. 2017); *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973); TMEP §1207.01(b)-(b)(v).

In the present case, applicant's mark is GLUCOSE GODDESS in standard characters and registrant's mark is GLUCOSE GODDESS in standard characters. These marks are identical in appearance, sound, and meaning, "and have the potential to be used . . . in exactly the same manner." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd,* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Additionally, because they are identical, these marks are likely to engender the same connotation and overall commercial impression when considered in connection with applicant's and registrant's respective goods and/or services. *Id.*

Therefore, the marks are confusingly similar.

Relatedness of the Goods and/or Services

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

Determining likelihood of confusion is based on the descriptions of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i); *see Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022) (quoting *In re Jump Designs LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006)).

Where the marks of the respective parties are identical, as in this case, the degree of similarity or relatedness between the goods and/or services needed to support a finding of likelihood of confusion declines. *See In re Country Oven, Inc.*, 2019 USPQ2d 443903, at *5 (TTAB 2019) (citing *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017)); TMEP §1207.01(a); *see also In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993).

In the present case, the services in the cited registration comprise "Educational services, namely, workshops, seminars and personal coaching services in the field of self and health awareness," which includes workshops, seminars and personal coaching services about diabetes awareness. Applicant's goods include nutritional supplements, software for monitoring, measuring and tracking blood glucose levels, medical apparatus, including glucose meters and monitoring equipment, and information and advisory services in the fields of health, nutrition and diabetes. Registrant's services are closely related to these goods and services in the application because both parties' goods and/or services explicitly have a focus on health and/or diabetes. All of these goods and services are likely to be targeted toward the same classes of consumers, i.e., people managing diabetes and/or blood glucose levels and/or assisting another in managing diabetes and/or blood glucose levels. The internet evidence made of record in the prior Office action and in this final Office action shows that personal coaching and education services about health and diabetes commonly originate from a single source under the same mark as nutritional supplements, software applications, medical apparatus, and information and advisory services in the fields of health, nutrition and diabetes. Thus, applicant's goods and services, in relevant part, and registrant's services are considered related for likelihood of confusion purposes. *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

Applicant's Arguments

Applicant asserts that "Registrant is a comedian" and that "the cited registrant's services are 'personal coaching' comedic performances."[1] This argument is not persuasive. As explained above, determining likelihood of confusion is based on the descriptions of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d at 1307, 128 USPQ2d at 1052. Applicant may not restrict the scope of the services covered in the registration by extrinsic argument or evidence. *See, e.g., In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 764 (TTAB 1986).

In the present case, the cited registration identifies the services as "Educational services, namely, workshops, seminars and personal coaching services in the field of self and health awareness." As the

attached entries from the American Heritage dictionary show, the term "coach" means "[t]o train or tutor or to act as a trainer or tutor" and the term "personal" means "[d]one to or for or directed toward a particular person."  A "workshop" refers to "[a]n educational seminar or series of meetings emphasizing interaction and exchange of information among a usually small number of participants."  The Oxford dictionary defines a "seminar" as "a meeting for discussion or training."  Registrant's services, as identified, are educational in nature, and are presumed to encompass all services of the types described.  A "comedic performance" is qualitatively different from the services recited in the registration.  While the registrant may or may not offer additional services under the proposed mark, it is the educational services recited in the registration that are relevant to the likelihood of confusion analysis.  The fact that registrant may or may not offer additional services under the proposed mark has no bearing on the instant refusal.  Moreover, the subject matter "health awareness" in the cited registration is not limited to particular health awareness topics and is presumed to cover all such topics, including diabetes and blood glucose health awareness.

Applicant contends that "The Parties' Goods and Services are Sold in Different Channels of Commerce and Marketed to Different Consumers."[2]

However, neither the instant application nor the cited registration are limited to particular channels of trade or classes of consumers.  Further, the evidence of record shows that parties who offer educational services such as personal coaching and/or seminars on health topics commonly also offer dietary supplements, information and advice, software applications, and/or medical devices concerning blood glucose levels.  Thus, the evidence shows that the types of educational services identified in the cited registration are closely related to the relevant goods and services to which the refusal applies.

Applicant also argues that purchasers of the parties' goods and services are sophisticated, and asserts that "to the extent that [registrant's services] are aimed at people with diabetes, Registrant's consumers have a degree of familiarity with the medical condition."[3] Applicant contends that "[g]iven Applicant's goods and services are directed to the scientific/medical 'focus on health and diabetes' . . . these consumers also bring a level of sophistication."[4]  These statement are speculative in nature and lack any evidentiary support.  Applicant has failed to provide any evidence to support its contention that the relevant consumers of the parties' goods and/or services are sophisticated.  Even if consumers of the compared goods and/or services could be considered sophisticated and discriminating, it is settled that "even sophisticated purchasers are not immune from source confusion, especially in cases such as the present one involving identical marks and related goods [and/or services]." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1413 (TTAB 2015) (citing *In re Research & Trading Corp.*, 793 F.2d 1276, 1279, 230 USPQ 49, 50 (Fed. Cir. 1986)), *aff'd,* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017); *see also In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993).  The identity of the marks and the relatedness of the goods and/or services "outweigh any presumed sophisticated purchasing decision." *In re i.am.symbolic, llc*, 116 USPQ2d at 1413 (citing *HRL Assocs., Inc. v. Weiss Assocs., Inc.*, 12 USPQ2d 1819, 1823 (TTAB 1989), *aff'd*, 902 F.2d 1546, 14 USPQ2d 1840 (Fed. Cir. 1990)); *see also Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1325, 110 USPQ2d 1157, 1163-64 (Fed. Cir. 2014).

Finally, applicant argues that "Registrant and Applicant both operate in the marketplace together already."[5]  However, the instant application was filed under Section 66(a) and there is no evidence in the record of applicant's use of the proposed mark in U.S. commerce in connection with the relevant goods and services.  Moreover, to the extent applicant is implying that there is no actual confusion as to the source of the parties' goods and/or services, applicant is reminded that "'[a] showing of actual confusion is not necessary to establish a likelihood of confusion.'" *In re i.am.symbolic, llc*, 866 F.3d

1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); TMEP §1207.01(d)(ii). "[T]he relevant test is *likelihood* of confusion, not *actual* confusion." *In re Detroit Athletic Co.*, 903 F.3d 1297, 1309, 128 USPQ2d 1047, 1053 (Fed. Cir. 2018) (emphasis in original). "Uncorroborated statements of no known instances of actual confusion . . . are of little evidentiary value," especially in ex parte examination. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1317, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003).

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

Summary

Because applicant's mark is identical to the registered mark, and because applicant's goods and services, in relevant part, are closely related to services in the cited registration, there is a likelihood of confusion as to the source of the goods and/or services.

For the reasons set forth above, the refusal under Trademark Act Section 2(d) is now made FINAL as to International Classes 5, 9, 10 and 44 with respect to U.S. Registration No. 3107841. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.63(b).

**Requirement to Clarify the Identification of Goods and/or Services**

THIS FINAL REQUIREMENT APPLIES ONLY TO THE PARTICULAR GOODS INDICATED BELOW.

In the initial Office action, applicant was required to clarify the identification of goods and services because it included wording that was indefinite, overly broad or otherwise unacceptable. *See* TMEP §1402.01. In response to this requirement, applicant submitted an amended identification of goods and services. While this amended identification satisfactorily addresses most of the issues raised in the initial Office action, it is unacceptable because it still contains indefinite, overly broad or unacceptable wording. Therefore, the requirement to clarify the identification of goods and/or services is now made FINAL. *See* 37 C.F.R. §§2.32(a)(6), 2.63(b); TMEP §1402.01.

In particular, applicant must clarify the identification as follows:

*International Class 29*

The proposed amended wording "dairy-based snack foods" in the identification of goods must be clarified because it is indefinite, too broad and could include goods in more than one international class. *See* 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.03. For example, this wording could encompass "cheese-based snack foods" in International Class 29 and "ice cream-based snack foods" in International Class 30. Therefore, applicant must specify the particular types of the goods using the

common commercial or generic names for the goods. Applicant must ensure that the amended identification identifies types of these goods in International Class 29 only, which is the class specified in the application for the goods by the International Bureau.

*International Class 30*

The proposed amended wording "fruit jellies" in the identification of goods must be clarified because it is indefinite, too broad and could include goods in more than one international class. *See* 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.03. For example, this wording could encompass "fruit jelly spreads" in International Class 29 and "fruit jelly candy" in International Class 30. Therefore, applicant must specify the particular types of the goods using the common commercial or generic names for the goods. Applicant must ensure that the amended identification identifies types of these goods in International Class 30 only, which is the class specified in the application for the goods by the International Bureau.

*Scope Advisory*

Applicant's goods and/or services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably narrowed. *See* 37 C.F.R. §2.71(a); TMEP §§1402.06, 1904.02(c)(iv). Applicant may clarify or limit the identification by inserting qualifying language or deleting items to result in a more specific identification; however, applicant may not substitute different goods and/or services or add goods and/or services not found or encompassed by those in the original application or as acceptably narrowed. *See* TMEP §1402.06(a)-(b). The scope of the goods and/or services sets the outer limit for any changes to the identification and is generally determined by the ordinary meaning of the wording in the identification. TMEP §§1402.06(b), 1402.07(a)-(b). Any acceptable changes to the goods and/or services will further limit scope, and once goods and/or services are deleted, they are not permitted to be reinserted. TMEP §1402.07(e). Additionally, for applications filed under Trademark Act Section 66(a), the scope of the identification for purposes of permissible amendments is limited by the international class assigned by the International Bureau of the World Intellectual Property Organization (International Bureau); and the classification of goods and/or services may not be changed from that assigned by the International Bureau. 37 C.F.R. §2.85(d); TMEP §§1401.03(d), 1904.02(b). Further, in a multiple-class Section 66(a) application, classes may not be added or goods and/or services transferred from one existing class to another. 37 C.F.R. §2.85(d); TMEP §1401.03(d).

*Suggested Amendments*

Applicant should note that any wording in **bold** or in ***bold italics*** below offers guidance and/or shows the changes being proposed for the identification of goods and/or services. If there is wording in applicant's version of the identification of goods and/or services that should be removed, it will be shown in bold with a line through it such as this: **~~strikethrough~~**. Applicant should enter its amendments in standard font. If applicant wishes to accept the suggested deletions, applicant <u>must manually delete</u> the struck through wording in any USPTO response form. Copying and pasting the language below <u>will not</u> result in deletion of the struck through wording, which will remain within the identification.

Applicant may adopt the following identification of goods and services, if accurate:

<u>International Class 5</u>: [NO CHANGE] Food supplements and dietetic preparations, namely, dietary

supplements, natural dietary supplements; food supplements for non-medical use; food supplements in the form of beverages; food supplements suitable for human consumption; nutritional supplements; nutraceuticals used as dietary supplements; food supplements with cosmetic effect; nutritional and dietetic preparations, namely, nutritional supplements, dietary supplements and natural dietary supplements; Liquid nutritional supplement; dietary supplements for persons with special diets

International Class 9: [NO CHANGE] Downloadable software applications for monitoring, measuring and tracking blood glucose levels; downloadable software applications for mobile telephones for monitoring, measuring and tracking blood glucose levels; downloadable software applications for mobile devices for monitoring, measuring and tracking blood glucose levels; recorded and downloadable software for monitoring, measuring and tracking blood glucose levels; downloadable software for monitoring, measuring and tracking blood glucose levels

International Class 10: [NO CHANGE] Blood glucose meters; medical apparatus for measuring glucose levels in the blood; medical apparatus for measuring blood sugar; medical devices for measuring blood glucose; blood glucose testing apparatus for medical use; blood glucose monitoring devices for medical use; medical apparatus and instruments, namely, glucose meters; glucose monitor, namely, medical apparatus for monitoring blood glucose levels; interstitial glucose monitor namely, medical apparatus for monitoring blood glucose levels; devices for monitoring blood glucose for medical use; continuous glucose monitoring devices for medical use; medical devices for monitoring blood properties; medical devices for monitoring blood properties that also communicate monitored results wirelessly to a smartphone; medical devices for subcutaneous monitoring of blood properties

International Class 29: Meat, poultry, fish, and game, not live; pâtés based on the aforesaid goods; charcuterie; salted meats; preserved, dried and cooked fruit and vegetables; dried fruits; cooked fruits; crystallized fruits; jellies, jams, compotes, fruit and vegetable-based spreads; edible oils and fats; eggs; milk and dairy products, namely, milk, cheese, butter, yogurt, cream; dairy-based food beverages, dairy-based snack foods**, namely, {specify type in Class 29, e.g., *cheese-based snack foods*}**; cheese; yogurts; butter; soups; soup, namely, bouillons; potages in the nature of vegetable soups; canned vegetables; canned fruits; vegetable-based snacks; fruit-based snack food; processed vegetables, namely, mashed vegetables; spreadable fruit puree; fruit pulps; marmalades; fruit peel; vegetable salads; fruit salads; sliced fruits; milk-based beverages; milk beverages with milk predominating; crystallized, preserved and pickled ginger; meat extracts; meat jellies; canned meats; culinary preparations based on meat, poultry, fish or game, namely, prepared meals and entrees consisting primarily of meat, poultry, fish, or game; prepared dishes made primarily with meat, meat extracts, and/or charcuterie; prepared dishes consisting primarily of vegetables; prepared meat-based dishes; prepared fish-based dishes; prepared dishes consisting primarily of seafood; cooked meals consisting principally of fish; prepared dishes, namely, meat-based cooked dishes; prepared dishes, namely, vegetable-based cooked dishes; sausages; dry-cured sausages; ham

International Class 30: Coffee, tea, cocoa, sugar, rice, tapioca, sago, coffee substitutes; flour and preparations made from cereals, namely, processed cereals, breakfast cereals, and cereal-based snack foods; cocoa-based beverages; coffee-based beverages; chocolate-based beverages; tea-based beverages; bread; gingerbread; pastry and confectionery, namely, candy, pastilles, gum paste, fruit **jellies jelly candy**; sugar confectionery being confectionery made of sugar; cakes, tarts, cookies and biscuits; fruit cakes; madeleine cakes; chocolate-based spreads; chocolate; pasta; noodles; ice cream; ices, namely, sherbets; edible ices; ice for refreshment; meat pies; sandwiches, meat juices; honey, golden syrup; yeast, baking powder; seasonings; salt, pepper; mustard; mayonnaise; vinegar; condiment, namely, sauces; condiments, namely, relish, miso, chutneys; spices; edible spices;

preserved herbs as seasonings; spice mixes; dried pasta; breadsticks; risotto; toasts

International Class 32: [NO CHANGE] Waters, namely, drinking waters; mineral and aerated waters; non-alcoholic beverages, namely, flavoured waters, soft drinks; carbonated beverages, non-alcoholic; fruit-based drinks; fruit beverages; fruit juices; lemonades; soda water; preparations for making non-alcoholic carbonated beverages, non-alcoholic fruit-flavored beverages, soft drinks; syrups for making non-alcoholic carbonated beverages, fruit-flavored beverages, soft drinks, lemonade, flavoured mineral waters, non-alcoholic fruit juice beverages; smoothies being mixed fruit or vegetable beverages; syrups for lemonade; fruit nectars; non-alcoholic fruit juice beverages; non-alcoholic fruit extracts used in the preparation of beverages; non-alcoholic aperitifs; non-alcoholic beers

International Class 44: [NO CHANGE] Information services in the fields of nutrition, health and diabetes; advisory services in the fields of nutrition, health and diabetes; advisory services in the fields of dietetics and nutrition; providing health information regarding food supplements and nutrition; provision of health and nutrition information relating to dietary and nutritional supplements; advisory services with respect to diet; providing information via the Internet in the field of diabetes; provision of dietetic information regarding food and feeding; provision of dietetic advice; providing dietary and nutritional advice

For assistance with identifying goods and services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*. *See* TMEP §1402.04.

**Response Options & Partial Abandonment Advisory**

If applicant does not respond to this final Office action by the response deadline, the following goods and services to which the final refusal and/or requirement applies will be deleted from the application by Examiner's Amendment: all goods in International Classes 5, 9, and 10, "dairy-based snack foods" in International Class 29, "fruit jellies" in International Class 30, and all services in International Class 44.  37 C.F.R. §2.65(a); *see* 15 U.S.C. §1062(b).

In such case, the application will proceed for the following goods only:

International Class 29: Meat, poultry, fish, and game, not live; pâtés based on the aforesaid goods; charcuterie; salted meats; preserved, dried and cooked fruit and vegetables; dried fruits; cooked fruits; crystallized fruits; jellies, jams, compotes, fruit and vegetable-based spreads; edible oils and fats; eggs; milk and dairy products, namely, milk, cheese, butter, yogurt, cream; dairy-based food beverages; cheese; yogurts; butter; soups; soup, namely, bouillons; potages in the nature of vegetable soups; canned vegetables; canned fruits; vegetable-based snacks; fruit-based snack food; processed vegetables, namely, mashed vegetables; spreadable fruit puree; fruit pulps; marmalades; fruit peel; vegetable salads; fruit salads; sliced fruits; milk-based beverages; milk beverages with milk predominating; crystallized, preserved and pickled ginger; meat extracts; meat jellies; canned meats; culinary preparations based on meat, poultry, fish or game, namely, prepared meals and entrees consisting primarily of meat, poultry, fish, or game; prepared dishes made primarily with meat, meat extracts, and/or charcuterie; prepared dishes consisting primarily of vegetables; prepared meat-based dishes; prepared fish-based dishes; prepared dishes consisting primarily of seafood; cooked meals consisting principally of fish; prepared dishes, namely, meat-based cooked dishes; prepared dishes, namely, vegetable-based cooked dishes; sausages; dry-cured sausages; ham

International Class 30: Coffee, tea, cocoa, sugar, rice, tapioca, sago, coffee substitutes; flour and preparations made from cereals, namely, processed cereals, breakfast cereals, and cereal-based snack foods; cocoa-based beverages; coffee-based beverages; chocolate-based beverages; tea-based beverages; bread; gingerbread; pastry and confectionery, namely, candy, pastilles, gum paste; sugar confectionery being confectionery made of sugar; cakes, tarts, cookies and biscuits; fruit cakes; madeleine cakes; chocolate-based spreads; chocolate; pasta; noodles; ice cream; ices, namely, sherbets; edible ices; ice for refreshment; meat pies; sandwiches, meat juices; honey, golden syrup; yeast, baking powder; seasonings; salt, pepper; mustard; mayonnaise; vinegar; condiment, namely, sauces; condiments, namely, relish, miso, chutneys; spices; edible spices; preserved herbs as seasonings; spice mixes; dried pasta; breadsticks; risotto; toasts

International Class 32: Waters, namely, drinking waters; mineral and aerated waters; non-alcoholic beverages, namely, flavoured waters, soft drinks; carbonated beverages, non-alcoholic; fruit-based drinks; fruit beverages; fruit juices; lemonades; soda water; preparations for making non-alcoholic carbonated beverages, non-alcoholic fruit-flavored beverages, soft drinks; syrups for making non-alcoholic carbonated beverages, fruit-flavored beverages, soft drinks, lemonade, flavoured mineral waters, non-alcoholic fruit juice beverages; smoothies being mixed fruit or vegetable beverages; syrups for lemonade; fruit nectars; non-alcoholic fruit juice beverages; non-alcoholic fruit extracts used in the preparation of beverages; non-alcoholic aperitifs; non-alcoholic beers

**How to respond. Click to file a response to this final Office action and/or appeal it to the Trademark Trial and Appeal Board (TTAB).**

If applicant has any questions about this final Office action, please contact the undersigned examining attorney.

/Linda Lavache/
Trademark Examining Attorney
Law Office 106
(571) 272-7187
Linda.Lavache@USPTO.GOV


## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon**. If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**End Notes**

1. July 10, 2023 Response to Office Action at TSDR p. 3-4.
2. July 10, 2023 Response to Office Action at TSDR p. 4.
3. July 10, 2023 Response to Office Action at TSDR p. 5.
4. July 10, 2023 Response to Office Action at TSDR p. 5.
5. July 10, 2023 Response to Office Action at TSDR p. 5.